# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

UNITED STATES OF AMERICA

vs.   Case No. 6:12-cr-306-Orl-37GJK

ROBERT RAMIREZ

## ORDER

This cause is before the Court on the following:

1. Defendant's Oral Second Renewed Motion for Judgment of Acquittal (Doc. 47), made February 7, 2013;

2. Defendant Ramirez's Memorandum in Support of Oral Second Renewed Motion for Judgment of Acquittal (Doc. 55), filed February 19, 2013; and

3. United States' Response in Opposition to Defendant's Motion for Judgment of Acquittal (Doc. 56), filed February 25, 2013.

Upon consideration, the Court hereby grants Defendant's motion, for the reasons set forth below.

## BACKGROUND

A two-day jury trial was held in this matter beginning on February 5, 2013. (Docs. 40, 45, Minute Entries.) Defendant was charged with knowingly and willfully damaging and disabling an aircraft, in violation of 18 U.S.C. § 32(a). (Doc. 11.)

The facts established at trial were as follows.[1] Defendant was mentally and emotionally troubled; he had previously been hospitalized for psychiatric evaluation and treatment following a suicide attempt, and he was prescribed medication. In the weeks

---

[1] No official transcripts are yet available as of the date of this Order.

leading up to the alleged offense, Defendant had moved out of his mother's house in New Jersey and had been living in Orlando. He had stopped taking his medication and had become unstable, so his mother came to Orlando to bring him home. At the airport, they were originally directed to the wrong gate and had to rush to make their flight. The gate agent noted that Defendant was agitated and asked his mother to calm him down before they boarded. Once they got on the plane, they sat in the wrong seats. They were directed to the right seats, and Defendant roughly put his bag in the overhead bin. Defendant was visibly upset and shaking. The passenger sitting next to him made some sort of comment about Defendant's behavior.[2] Then Defendant punched the interior plexiglass window next to his seat, which broke. He was removed and interviewed by an FBI agent, to whom Defendant said that he had "lost his cool." The airplane was repaired and took off within an hour.

The trial itself took approximately six hours. The jury deliberated for another six hours and were unable to reach a verdict, even after a modified *Allen* charge was given. The Court discharged the jury, declared a mistrial based on manifest necessity, and took Defendant's oral second renewed motion for a judgment of acquittal under advisement.

## STANDARDS

"If the jury has failed to return a verdict, the court may enter a judgment of acquittal." Fed. R. Crim. P. 29(c)(2). The Court may grant a motion for acquittal even after a mistrial is declared. *See United States v. Martin Linen Supply Co.*, 430 U.S. 564,

---

[2] The passenger's testimony at trial was somewhat unclear as to the actual content of his comment. He said it was something to the effect of "Is he going to apologize?" It was not entirely clear to whom he said this or what the exact statement was.

575 (1977) (holding that "the Double Jeopardy Clause bars appeal from an acquittal entered under Rule 29(c) after a jury mistrial").

Acquittal is warranted if "[t]he evidence is as consistent with innocence as with guilt." *Candler v. United States*, 146 F.2d 424, 426 (5th Cir. 1944). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

**DISCUSSION**

Even viewed in the light most favorable to the Government, the Court finds that the evidence presented at trial was insufficient to permit a jury to reasonably find the Defendant guilty beyond a reasonable doubt. The predominant issue at trial was whether Defendant had the requisite mental state to commit the offense: "knowingly and willfully."[3] In the instructions to the jury, "knowingly" was defined as "voluntarily and intentionally and not because of mistake or accident"; "willfully" was defined as "voluntarily and purposely, with the specific intent to do something the law forbids; that

---

[3] Though the statute says only "willfully," 18 U.S.C. § 32(a), the Indictment charges both "knowingly and willfully." (Doc. 11.) The Court ruled at trial that the Government would have to prove both because it alleged both, and instructed the jury on both mental states. *See United States v. Cancelliere*, 69 F.3d 1116, 1122 (11th Cir. 1995) ("The government alleged [both 'knowingly' and 'willfully'] even though it need not have, and it must be charged with proving it.").

The Government suggests that this is a "heightened burden of proof." (Doc. 56, p. 7.) However, *Cancelliere* suggests that "willfully" is a higher standard than "knowingly." 69 F.3d at 1121–22. In that case, the statute required "knowingly" but the indictment added "willfully," and the court found that redacting "willfully" was error because it "impermissibly broadened the bases for [the defendant's] conviction." *Id.* at 1121. In the instant case, however, the facts are reversed—"willfully" was already in the statute, and the less stringent "knowingly" was mistakenly added in the Indictment. Thus, the Government is not subject to a "heightened" burden, but rather is simply being held to its burden to prove up the mental state required by the statute.

3

is with bad purpose either to disobey or disregard the law."[4] (Doc. 52, p. 6.) Thus, the relevant inquiry is not whether Defendant actually struck the interior of the plane—which is undisputed—but rather, whether he did so with the requisite intent to damage or disable, or attempt to damage or disable, the aircraft.

The Government's evidence going to Defendant's mental state primarily consisted of the testimony of the FBI agent who interviewed Defendant shortly after the incident. The agent testified that Defendant stated that he "lost his cool" when he hit the window. The agent interpreted that statement to mean that Defendant was angry. On the stand, however, Defendant testified that he was stricken with anxiety that overwhelmed him, causing him to "black out" or experience tunnel vision, and that he did not realize that he had punched the window until it had already happened. Thus, the

---

[4] The Government suggests that the definition of "willfully" listed above and read to the jury is "unfortunate" because it uses the words "specific intent." (Doc. 56, pp. 8–9.) However, this is the Eleventh Circuit's 2003 pattern language—which the Government submitted. (*See* Doc. 29, p. 20, Proposed Jury Instructions ("[T]he word 'willfully,' . . . means that the act was committed voluntarily and purposely with the specific intent to do something the law forbids . . . .").) The Government also did not object to that language either at the charging conference or after the instruction was given to the jury. Therefore, the Court considers any argument that the definition of "willfully" was inaccurate to be waived.

The Court is aware, however, that the Eleventh Circuit's 2010 pattern language is slightly different than the 2003 language: it removes the word "specific" from the above definition and adds a sentence stating, "While a person must have acted with the intent to do something the law forbids . . . , the person need not be aware of the specific law or rule that his conduct may be violating." Eleventh Circuit Pattern Jury Instructions (Criminal Cases), 2010, pp. 35–36 (citing *Bryan v. United States*, 524 U.S. 184, 191–93 (1998)). However, *Bryan* does not alter the notion that to act "willfully" is to act "with bad purpose"—it simply reiterates that one need not know of the particular law one is violating in order to act willfully. 524 U.S. at 193. That part of the definition is not implicated in the instant case; there is no dispute about whether Defendant knew that breaking an airplane window was against the law. Rather, the dispute is centered on whether Defendant acted with bad purpose—that is, whether he intended to break the window. This inquiry is unchanged by *Bryan* or by the 2010 update to the pattern instructions.

"lost his cool" statement in inconclusive at best.[5] Even assuming that Defendant tacitly acknowledged punching the window in anger, this fact, in and of itself, is insufficient to show an intent to do something the law forbids—to damage or disable an aircraft.

The only other piece of evidence that tended to prove Defendant's mental state was the testimony of the passenger sitting next to Defendant, who was the only person who actually saw Defendant hit the window. When counsel for the Government attempted to elicit testimony about how Defendant struck the window, counsel mimicked exaggeratedly pulling a fist back and aiming at the window. However, the passenger did not agree entirely with this demonstration; rather, the passenger simply lifted his hand sideways to show how Defendant made contact with the window. This gesture did not suggest the sort of deliberate action that the Government urges—another instance of ambiguous testimony.

Accordingly, the Court finds that the Government has not met its burden of proving that Defendant committed the offense knowingly and willfully. There was no actual proof demonstrating that he *intended* to break the window. Did he aim for the window on purpose in order to break it, or did he think that an airplane window would be reinforced so as not to break? Was he expecting his fist to merely glance the window in a gesture of frustration, much like slamming the overhead bin? To extend the Government's theory of the case to its logical endpoint, if the overhead bin had broken when Defendant slammed it shut, Defendant would have been guilty of the federal felony of willfully damaging an aircraft. Would it be boorish behavior? Without question. Federal crime? Likely not. Defendant did not shoot a .22-caliber rifle at a low-flying

---

[5] The relevance of this statement is also marginalized by the fact that it was not made contemporaneously with the incident.

5

cropduster because it came too close to his house, *cf. United States v. Hume*, 453 F.2d 339, 339 (5th Cir. 1971) (affirming conviction under 18 U.S.C. § 32), nor did he shoot a pistol at a police helicopter while attempting to evade arrest, *cf. United States v. Butler*, No. 11-4440, 2012 WL 3985323, at *1 (3d Cir. Sept. 11, 2012) (affirming conviction under 18 U.S.C. § 32), nor did he conspire to hijack an airplane, *cf. United States v. Abu Ali*, 410 F. App'x 673, 675 (4th Cir. 2011) (affirming sentence of terrorist convicted under 18 U.S.C. § 32). He struck an interior window of an airplane sitting on the tarmac at the gate.

These rhetorical questions are unanswerable and these hypotheticals are incongruous because the Government has failed to produce the quantum of proof necessary to show that Defendant acted with the requisite bad intent to damage or disable the airplane. The relatively meager evidence put forth by the Government means that the jury could only improperly speculate about Defendant's intent. *See United States v. Herberman*, 583 F.2d 222, 231 (5th Cir. 1978) ("[A] trial judge has the duty to grant the motion for judgment of acquittal when the evidence, viewed in the light most favorable to the government, is so scant that the jury could only speculate as to defendant's guilt.").

The Government simply states that Defendant did not trip and fall into the window and points to this as proof that the action was voluntary, intentional, and done with bad purpose. (Doc. 56, p. 7.) However, this is precisely the problem—the Government put on no evidence affirmatively demonstrating that Defendant's action was, in fact, not an accident or a mistake. Noting the absence of evidence supporting

Defendant's theory[6] is not the same thing as proving up the *mens rea* element, particularly when the Government bears the heavy burden of proof beyond a reasonable doubt. Furthermore, Defendant and his mother did, in fact, testify that the window damage was an accident owing to his heightened stress level. Even the one eyewitness who actually saw the strike did not demonstrate that Defendant was intentionally aiming for the window or that he meant to break it. *See United States v. Jeffords*, 491 F.2d 90, 91–92 (5th Cir. 1974) (noting the general weakness of the Government's case, which was based on the inconclusive testimony of one eyewitness, and reversing the trial court's denial of the defendant's motion for judgment of acquittal). Thus, contrary to the Government's assertion that "[t]he evidence showed clearly that the [D]efendant did not mistakenly or accidentally shatter the window," (Doc. 56, p. 7), the evidence actually did not show that at all. Rather, the Government offered up a paltry amount of evidence on the issue of Defendant's intent to damage the aircraft, and even the proof offered was ambiguous and inconclusive.

Consequently, the Government has not offered sufficient evidence upon which a reasonable jury could conclude, beyond a reasonable doubt, that Defendant acted voluntarily, purposely, and with bad purpose to damage or disable, or attempt to damage or disable, the aircraft. On this record, any reasonable jury would have many well-founded doubts about whether Defendant actually intended to damage the airplane. Even construing the evidence in the light most favorable to the Government, the Court finds that the Government has failed to meet its burden. Therefore, Defendant's motion for a judgment of acquittal is due to be granted.

---

[6] Whether Defendant "blacked out" is of no particular moment and the Court does not specifically credit this testimony. Nonetheless, it is undisputed that Defendant was in some state of emotional turmoil.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendant's Oral Second Renewed Motion for Judgment of Acquittal (Doc. 47) is **GRANTED**.

2. The Clerk is **DIRECTED** to enter a judgment of acquittal as to Defendant.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on March 12, 2013.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record